All right. Yeah. Please be seated. Afternoon. As you can see, Justice Chapman, who was scheduled to be on our doctor, is not here this afternoon. She's unable to be with us. No disrespect to you all. And as you know, these arguments are recorded and available to the public, so she will be able to listen to the arguments and she will be participating in the disposition of these appeals. Okay, the next case on my docket for the afternoon is 5-16-0078 in the interest of R.A. Ms. McCarthy. Thank you, Your Honor. May it please the court and counsel. My name is Bill Miller. I represent a bylaw for parents in this case, Catherine A. and Stephen A. They are the parents of the minor R.A. Down below, the trial court entered an order of adjudication finding that R.A. was abused and neglected due to an environment injurious to the welfare of the minor. It's basically a messy house case. At the dispositional hearing, the minor was found to be awarded a court place in the custody of PCFS. Parents Robin and Jim Atwater appealed this dispositional order. They timely filed their appeals. No issues were raised by the pleadings in this particular case. Let me correct the record for just a moment. I made an error. You are Mr. Millman. Correct. Okay. I called you someone else, and I apologize for that. But I want Justice Chapman to be able to know who's speaking. That's all right. Thank you very much, Your Honor. I apologize. In this case, there were – what happened basically is this. R.A. had never been removed from the home before until they had this removal that occurred, which led to the adjudication. She was living in the home. It's not under the care or supervision of DCFS. The other children had been removed. There were other children that are not part of this appeal. They were under a safety plan. That was all not followed allegedly, so these children were all taken. Ultimately, they had to then do an adjudication hearing and a dispositional hearing with regard to the minor involved in this appeal, who was the youngest minor there. The other children were removed because of the same kinds of issues, is that right? They were removed at a different time for these same things that were put back under a safety plan. What I would note for the court is that after the adjudicatory hearing, about a month went by, they then came back to have the dispositional hearing with regard to R.A. Now, the evidence that was adduced at that hearing through the DCFS caseworker, she was with Caritas, but the DCFS had hired them, of course, to supervise this. She basically said that the conditions for which the child had been removed, the unclean home, had been remedied. The home was good, she said. It was clean. And just to make sure I understand, at this point, the other three children were still out. They were still out, yes. So we're at a situation where we're faced with the court. The child was clean that day, of course. The child had not been in the care of the parents, but the home was now satisfactory. And if you review the record, that was the main reason that the child was removed from the home. But the state workers were still concerned about the ability of the parents to continue with them because that had failed in the past. And that's what the record shows, Your Honor. And it's clear from the record, if the judge was going to consider all the factors, if he was going to consider the fact that these other children had been returned and progress was not made, that's something that we don't think should be considered as to this particular child who had never been basically made a ward of the court and a guardian because the conditions of adjudication under which this child were taken were removed at the dispositional. It's our position this child could have been and should have been returned home. Well, but the dispositional here is preponderance of the evidence. I understand that. And you're saying that the court should not have considered the other children? I think what the court has done, and I know the state argues in their brief that this is not a case of anticipatory neglect, but I think it is. Now, in the case we cited, the child was not present at the home when this occurred. In this case, the child is at the home. But still, what the court is doing is anticipating that if this child is returned home, the same neglect is going to occur again. Well, wasn't there some testimony about what the father believed was the appropriate method of keeping a child clean? I think in the case itself, and I didn't try the case, but I reviewed the record, he indicated that he thought he had a different standard of cleanliness, and I think he was more referring to how often to bathe a child. Right, like a bath once a week. Right. That would be regardless. Kind of like Saturday night. Yeah, like the child had Pop-Tarts in his hair or whatever. Well, I guess what I'm arguing is if you actually look at the evidence that was there, the reason this child was basically removed was because of a dirty house and her general uncleanliness. I was going to say it wasn't just the dirty house. As I understand, her clothes were dirty, her face and fingernails were dirty, hair matted. The father thought she had Pop-Tarts in her hair. I understand that that evidence was there at the adjudicatory hearing, and I guess what I'm trying to argue at this point is that it was a violation of the standard of preponderance of the evidence that the judge abused their discretion because the conditions under which she was adjudicated were remedied, and that was the testimony. Now, there was a mention, and I'm not trying to hide this, that perhaps father and mother had not completed their psychological evaluations as well, but we just believe that if you look at all the evidence together, a preponderance of the evidence even, that the trial judge abused its discretion whenever it said the child should not be returned home because the conditions under which she was removed had been remedied, and it's anticipatory neglect to say, well, we've sent them home before and there's been a problem. But if the father has the viewpoint, for example, that the child should be bathed once a week or the messes should be cleaned up only at the end of the day when all the messes have been made, don't you think that offers a court foundation to say this is going to happen again just because that's what he believes? Well, he believes it, but he's also got a clean house now. Well, at that moment. I mean, you're taking a snapshot in time. Well, I'm taking a snapshot after they had been told to remedy this situation. They removed their youngest child, and now they've made these. The caseworker said the home's good. Right, but when they removed the other children, same problem. They have this child, same problem. Now it's clean again. And I understand that argument, Your Honor, and I understand it fully. You think that's anticipatory neglect? That's what I believe, that it's anticipatory neglect, because with this specific child, there had never been that problem. They had never addressed it before. So that's my argument in a nutshell. It's not a lengthy or very intellectual argument, but it's the argument that I think should be the law of this case, and that would be that this is one of anticipatory neglect, that the child should have been returned home, and it was abuse of the judge's discretion. If you have no further questions, I'll sit down. Just one other thing. I mean, what the judge did was he set the case for a permanency hearing and then wrote to track with three other cases, which I assume are the other three children. They are. In other words, it sounds like he's going to make the decision of when to return all of them at the same time, and is that an abuse of discretion? I believe if we're going to break it down where we look only at this particular child and what the reason for the adjudication was and what corrections have been made, yes, I think you should look at this particular child, not group them with the other children. And how does the case law define abuse of discretion? No reasonable person would adopt the view of the trial court. And it's a tough standard. It's a pretty tough standard, yes. A very tough standard, but that's our position that this was anticipatory neglect, and that you can utilize the case that we cited in the brief, which is People v. Arger, 212, Illinois 2nd, 441. It's a 2004 decision, and we cited it in our brief as well. But we believe the decision should be reversed and remanded. If you have no further questions, I appreciate your time. Thank you so much. Thank you so much. Okay. State, Ms. Stacy. Thank you, Your Honors. Your Honors. Counsel, may it please the Court, Kelly Stacy appearing on behalf of the State. I think it's important to note from the beginning this is appeal of a dispositional order. There has not been a termination of parental rights at this point. And the record in this case shows the family had its first interaction back in 2010 in Missouri. The father testified he had taken a class there called Love and Logic. And then the mother testified the family became involved in services in Illinois in 2013. At that time, the court found the children were neglected due to an injurious environment in the home. The condition of the home had gotten deplorable. The children were removed from the home and returned on January 24th or, sorry, January 14th, 2015, but were removed again on October 21st, 2015. Again, at that time, due to deplorable conditions in the home. There was a safety plan put in place. The parents failed to comply with that safety plan. And at that time, caseworkers had seen the one-year-old eating an old bagel and popcorn off the floor. And then at the dispositional hearing, the state argued that, I agree with Mr. Miller, progress had been made at that point in the home toward maintaining a safe and clean home, but that it would not be good for the children to be returned home too soon because they had this five-year history of repeated declines in the condition of the home. The respondents argued that it is not a proper consideration for the court about what went on with the other children. But here, there was not just allegations concerning the other children. There were also allegations concerning R.A. And, Your Honor, Justice Cates, you mentioned about the condition of the child of R.A. at one of the hearings that she had to be bathed and a lot going on with that child. So the order making R.A. the ward of the court was really not against the manifest way of the evidence. The parents testified that the house was messy because R.A. and the one-year-old kept dragging food everywhere and the food was left there and the other children began giving chores and nobody had cleaned the place up until the end of the day. In common experience, I think it's pretty safe to say one-year-olds are pretty messy people. What the trial court noted was that the parents were able to make progress while all of the children were out of the home because they were all in foster care. But what was going to happen when the children returned? Now, does that mean it's anticipatory neglect? I think the Arthur H. case cited by the respondents is quite a bit different than what we have here. In that Arthur H. case, it was a mother living with four children away from the biological father and the additional child there. So the child was not subjected to the conditions in the home, but the court ruled that based on anticipatory neglect, even though that child was in Wisconsin and the other children were in Illinois, it was still okay to make that child a ward of the court. I don't think we have that here because all of these children were in the same home. They were all subjected to the same conditions in the home. And I think another factor plays in here, and that is the mental health of the parents. There was something going on with them that made them have these repeated cycles of deplorable conditions in the home, not able to keep things clean. And it isn't just – it's not just okay to say, well, it's the kids that are doing this. The parents have a part to play here. The caseworker testified she made numerous attempts, between five and ten attempts, to contact the mental health counselors to find out about the progress of how the parents were doing in their counseling. No one ever returned the phone calls. So I think with this family, what the court looked at were all proper concerns. The definition of neglect is the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duty. It is true that at some point when the children are returned, the court is going to have to look at, well, are you able to keep the home clean with the children in the home? I think having a look at the progress the parents are making toward the mental health counseling will be a very good indicator for the court at that time to whether they're able to maintain the cleanliness of the home. And the state believes because the record here supports the finding of neglect, and if there are no questions by the court, we ask you to affirm the disposition order. Thank you, Your Honors. Thank you. Please, the court, just briefly. I don't think we need – I think I've made my point, and I think you understand the state's point in this. If you have any further questions, I'm willing to answer them. I still think if you look at the case, which talks about anticipatory neglect, the fact that one shot all these children in one place and the other was in another is not really the point the court was making. The point the court was making is that just because it happened with these kids doesn't necessarily mean it's going to happen when you put this kid back. And I think if you look at that case, this is exactly what we've done here is anticipatory neglect, and that's our position in the case. We believe that the decision of the judge should be reversed and remanded for an additional hearing. If you have no questions, that would be all I would have, Your Honors. Thank you very much. Thank you so much. Appreciate your arguments. As you know, this is a 1999 case. It's already by rule past due. However, because the case was not ready until June 28th, good cause has been shown to issue an opinion past the date that was ordinarily due. So this was the first available oral argument date, and we will get you an order forthwith. Thank you very much. Thank you.